## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH DEE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  14-1159** |
| **WARDEN ROBERT TANNER** | **SECTION "A"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

## I. *Procedural history*

Petitioner, Joseph Dee, is a state prisoner incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.  On February 7, 2008, he was charged by bill of information with one count of possession with intent to distribute heroin.[2]  On March 18, 2009, a jury found Dee guilty as charged.[3]  On April 17, 2009, he was sentenced to a term of 40 years imprisonment, the first 20 years of which were to be served without benefit of probation, parole or suspension of sentence.[4]  That same day, the State filed a multiple bill of information charging him as a third felony offender; however, the multiple bill was later dismissed.[5]

On February 23, 2010, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and amended his sentence to delete the prohibition on parole.[6]  On October 29, 2010, the Louisiana Supreme Court denied Dee's writ application.[7]

On September 1, 2011, Dee filed an application for post-conviction relief with the state

---

[2] State Rec., Vol. 1 of 6, Bill of information.

[3] State Rec., Vol. 1 of 6, Minute entry of March 18, 2009; see also Jury Verdict.

[4] State Rec., Vol. 2 of 6, Sentencing transcript, p. 6.

[5] State Rec., Vol. 1 of 6, Multiple bill of information; State Rec., Vol. 3 of 6, Docket Master entry dated October 15, 2009.

[6] *State v. Dee*, 09-712 (La. App. 5th Cir. 2/23/10), 34 So.3d 892.  The matter was remanded with instructions for correction of the commitment and minute entry.  The correction was made by the trial court on February 26, 2010. See State Rec., Vol. 3, Docket Master.

[7] *State v. Dee*, 2010-KO-0705 (La. 10/29/10), 48 So.3d 1097; State Rec., Vol. 3 of 6.

2

district court.[8]  On December 8, 2011, the state district court denied the application on the

merits.[9]  On or about February 10, 2012, Dee filed in the state district court a notice of intent

to seek supervisory writs to the Louisiana Fifth Circuit from the December 8, 2011 judgment

denying post-conviction relief.  On March 9, 2012, the state district court denied the notice of

intent as untimely filed.[10]  Dee filed his writ application with the Louisiana Fifth Circuit Court

of Appeal on or about March 2, 2012.[11]  On May 10, 2012, the Louisiana Fifth Circuit Court of

Appeal refused supervisory review of Dee's related writ application based on the district

court's order finding untimely his notice of intent to seek writs.[12]

In the interim, however, Dee had filed a request for clarification of the record with the

state district court, disputing the basis for the district court's denial of his notice of intent to

seek supervisory writs.[13]  On January 28, 2013, the district court found that Dee had not been

properly served with the December 8, 2011 ruling denying post-conviction relief, and granted

him until February 27, 2013 to seek supervisory writs from that ruling in the Louisiana Fifth

---

[8] State Rec., Vol. 5 of 6, Uniform application for post-conviction relief signed and dated September 1, 2011.

[9] *Id.*, State district court Order signed December 8, 2011.

[10] *Id.*, State district court Order signed March 9, 2012.

[11] *Id.*, Louisiana Fifth Circuit Application for supervisory writs, 12-KH-230.

[12] State Rec., Vol. 5 of 6, *State v. Dee*, 12-KH-230 (La. App. 5th Cir. May 10, 2012) (unpublished writ ruling).

[13] State Rec., Vol. 6 of 6, Petitioner's letter to Judge Miller dated March 18, 2012.

Circuit.[14]

On February 27, 2013, Dee's attorney filed a supervisory writ application with the Louisiana Fifth Circuit on his behalf.[15]  On April 4, 2013, the court of appeal denied his writ application on the merits.[16]  Counsel of record timely filed a related writ application with the Louisiana Supreme Court on Dee's behalf.  On October 4, 2013, the Louisiana Supreme Court denied the writ application without stated reasons.[17]

On May 17, 2014, Dee filed his federal application for *habeas corpus* relief.[18]  In his petition, Dee asserts the following grounds for relief:  (1) the evidence was legally insufficient to support a finding of constructive possession of heroin; (2) he was denied effective assistance of trial counsel due to his failure to obtain hotel security camera footage and police department dispatch logs; and (3) he was denied effective assistance of appellate counsel due to his failure to raise on direct appeal a claim of insufficient evidence.

---

[14] State Rec., Vol. 5 of 6, Minute entry of January 28, 2013; see also Docket Master.

[15] *Id.*, Supervisory writ application No. 13-KH-172 stamped as filed February 27, 2013.

[16] *Id.*, *State v. Dee*, 13-KH-172 (La. App. 5th Cir. Apr. 4, 2013) (unpublished writ ruling).

[17] *State v. Dee*, 13-KP-1016 (La. 10/4/13), 122 So.3d 1019; see also State Rec., Vol. 6 of 6.

[18] Rec. Doc. No. 3, Petition for writ of *habeas corpus*.  "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Dee's application is dated May 17, 2014, which is presumed to be the earliest date on which he could have delivered it to prison officials.

The State asserts that the federal petition is untimely. Alternatively, the State contends the petition is subject to dismissal as a mixed petition because Dee failed to exhaust his first claim for relief. For the following reasons, however, the Court rejects both procedural arguments, however.

## II. *Preliminary review - Timeliness and Exhaustion*

A. *Timeliness*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has one year within which to bring his *habeas corpus* claims pursuant to 28 U.S.C. § 2254, with this one-year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of the time for seeking review. *See* 28 U.S.C. § 2244(d)(1)(A).[19] In this case, Dee's conviction became final, for federal limitations purposes,

---

[19] Title 28 U.S.C. § 2244(d) provides additional grounds as well, which do not apply here:

(1) A 1–year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

on January 27, 2011, after the 90-day deadline had passed for filing a writ of certiorari with the United States Supreme Court.[20] Under a plain reading of the statute, Dee then had one year within which to file his federal *habeas* petition, or a deadline of January 27, 2012.  Dee did not file his federal *habeas* petition with this Court until May 17, 2014.  However, the one-year statute of limitations period is subject to interruption as set forth in 28 U.S.C. § 2244(d)(2).

AEDPA's one-year limitation period is tolled for the time during which a properly filed application for state post-conviction relief or other collateral review is pending in a state court. 28 U.S.C. § 2244(d)(2). Under 28 U.S.C. § 2244(d)(2), a matter is pending as long as the ordinary collateral review process is in continuance. *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).  Dee allowed 216 days to run before he filed his application for post-conviction relief in the state district court on September 1, 2011.  The State allows for tolling throughout the pendency of the post-conviction review proceedings.[21]  The one-year federal limitations period began to run again when the Louisiana Supreme Court denied supervisory relief on October 4, 2013.  As Dee concedes and the State notes, he filed no further

---

[20] See Sup.Ct.R. 13.1; see also *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.1999).  In this case, the 90 days commenced with the Louisiana Supreme Court's denial of certiorari on October 29, 2010 and ended on January 27, 2011 with the expiration of the deadline for filing a request for writ of certiorari with the U.S. Supreme Court.

[21] Based on the procedural history outlined above, the State submits and this Court accepts that Dee's writ applications to the Louisiana Fifth Circuit (No. 13-KH-172) and the Louisiana Supreme Court (13-KP-1016) were timely filed and served to properly toll the one-year statute of limitations.

pleadings that served to interrupt the limitations period after this point in time.[22]   Thus,

another 224 days elapsed for a total of 440 days.  The one-year federal limitations period

expired on March 3, 2014, more than two months before he filed his federal *habeas* petition

on May 17, 2014.  In fact, Dee accepts the State's time calculations and recognizes that absent

equitable tolling his federal petition is time-barred under § 2244.

       AEDPA's limitations period is subject to equitable tolling.  *Holland v. Florida*, 560 U.S.

631, 645, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)).  "The doctrine of equitable tolling

preserves a petitioner's claims when strict application of the statute of limitations would be

inequitable." *Rivera v. Quarterman*, 505 F.3d 349, 353 (5th Cir.2007), citing *Davis v. Johnson*,

158 F.3d 806 (5th Cir.1998).  "A petitioner is entitled to equitable tolling if he shows:  (1) that

he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood

in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. 408,

418 (2005); *see also Davis*, 158 F.3d at 810. Although "a garden variety claim of excusable

neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not

warrant equitable tolling," *Holland*, 560 U.S. at 651-52 (citations and internal quotation marks

---

       [22] The State correctly notes that Dee's motions or applications seeking production of documents cannot fairly be considered applications for state post-conviction relief or other collateral review for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. *Parker v. Cain*, 2002 WL 922383, at *2 n. 22 (E.D.La.2002); *Boyd v. Ward*, 2001 WL 533221, at *4 (E.D.La.2001).

omitted), extraordinary circumstances may be found where unprofessional attorney conduct is egregious or where a client is effectively abandoned by his lawyer. *Id.* at 651. What constitutes an "extraordinary circumstance" necessarily involves a "fact-intensive" inquiry. *Holland*, 560 U.S. at 654. The petitioner bears the burden of establishing entitlement to equitable tolling in the AEDPA context. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.2000).

Dee contends he is entitled to equitable tolling of the federal statute of limitations due to a delay attributable to his post-conviction counsel. Dee was represented by the same attorney at both appellate levels of post-conviction review. Counsel filed post-conviction applications on his behalf in the Louisiana Fifth Circuit and the Louisiana Supreme Court. Shortly after she filed his final writ application, however, conflicts arose from nonpayment of legal fees and she sought to withdraw from the representation. By letter dated May 19, 2013, she informed Dee that due to lack of payment in accordance with his contract she was terminating the attorney-client relationship and would be filing a motion to withdraw.[23] He heard nothing further from counsel. Nor did he receive any formal notice of withdrawal from counsel or the court. On March 14, 2014, he mailed a letter to the Louisiana Supreme Court inquiring about the status of his case. By letter dated March 24, 2014, Dee learned from Central Staff at the Louisiana Supreme Court that his writ application had been denied back

---

[23] Rec. Doc. 17-1, Exhibits attached to Dee's reply memorandum.

8

in October 2013.[24]  However, the notification came after the time to file his federal *habeas*

petition had lapsed.  Dee filed his federal application less than two months later on May 17,

2014.

Dee argues these constituted extraordinary circumstances beyond his control that

prevented him from bringing his federal petition in a timely manner.  The Court agrees.  Dee

has established both that an extraordinary circumstance prevented him from filing a timely

*habeas* petition and that he exercised the requisite reasonable diligence.  His retained counsel

effectively abandoned him when she attempted to terminate her representation, albeit

improperly, without taking any formal steps to withdraw as the attorney of record.[25]  *See*

*Maples v. Thomas*, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (evidence of abandonment

---

[24] *Id.*

[25] See Rule of Professional Conduct 1.16 (Declining or terminating representation),
which states in pertinent part:
> (c)     A lawyer must comply with applicable law requiring notice to or permission of
>         a tribunal when terminating a representation.... and
> (d)     Upon termination of representation, a lawyer shall take steps to the extent
>         reasonably practicable to protect a client's interests, such as giving reasonable
>         notice to the client, allowing time for employment of other counsel,
>         surrendering papers and property to which the client is entitled and refunding
>         any advance payment of fee or expense that has not been earned or incurred.

See also *Sterling v. Jones*, 255 La. 842, 233 So.2d 537, 539 (La. 1970) (recognizing the
legal right of an attorney-at-law, like any other agent, to discontinue his agency and that he
may at any stage of the litigation *secure an order of court* permitting him to withdraw as
counsel of record...) (emphasis added).

"would suffice to establish extraordinary circumstances beyond [a petitioner's] control" in context of whether attorney abandonment can establish "cause" to overcome procedural default of claims asserted in a petition for relief under 28 U.S.C. § 2254) (citing *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)); *see also Manning v. Epps*, 688 F.3d 177, 184 n. 2 (5th Cir.2012), *cert denied*, ––– U.S. ––––, 133 S.Ct. 1633, 185 L.Ed.2d 620 (2013) ("[A]ttorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes." (*citing Maples*, 132 S.Ct. at 924)); *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (attorney abandonment may constitute an "extraordinary circumstance" justifying equitable tolling under 28 U.S.C. § 2244(d)); *see also Mackey v. Hoffman*, No. C–07–4189–SI, 2012 WL 4753512, at *1 (N.D. Cal. Oct. 4, 2012) (the district court granted Rule 60(b) relief, finding abandonment based on attorney's failure to keep his client apprised of the status of the case, failure to inform the petitioner of the judgment denying the petition, and failure to seek permission from the court to withdraw as counsel of record).

Here, although Dee's counsel sent him a letter notifying him of her intent to terminate the attorney-client relationship, no formal motion to withdraw was ever filed in the Louisiana Supreme Court.  The Louisiana Supreme Court therefore had no record of her intention to withdraw as counsel of record in the matter.  The court's record continued to reflect that she remained the listed attorney of record for Dee throughout the proceedings.  As a result, Dee did not receive definitive notice of his counsel's withdrawal. More importantly, because she remained the listed attorney of record in the matter, the court continued to mail orders to

10

counsel, not Dee.  In fact, the Louisiana Supreme Court's records reflected only counsel's address; it had no personal contact information for Dee.[26]  Therefore, notice of the Louisiana Supreme Court's denial of his writ application was sent to counsel.  Dee maintains, and this Court accepts as true and supported by the evidence, that he first received a copy of the writ denial from the Louisiana Supreme Court by letter dated March 24, 2014.  Consequently, it is clear that counsel's actions or omissions in terminating the attorney-client relationship without formal steps to withdraw as attorney of record deprived Dee of the opportunity to receive timely notice of the Louisiana Supreme Court's denial of his writ application and to file in a timely manner his federal application. These factors clearly suggest attorney abandonment, not mere error.

Furthermore, Dee has shown that he acted with reasonable diligence.  Once he learned of the Louisiana Supreme Court's writ denial, he prepared and filed his own federal *habeas* petition *pro se* less than two months later.  *See Palacios v. Stephens*, 723 F.3d 600, 606-608 (5th Cir. 2013) (and cited cases regarding equitable tolling ramifications of attorney abandonment and reasonable diligence).

Accordingly, under the circumstances presented, Dee has shown he is entitled to

---

[26] Staff of the undersigned Magistrate Judge confirmed by telephone with the clerk's office at the Louisiana Supreme Court that the court's docket reflected Dee was represented by counsel for the duration of the proceedings, no motion to withdraw as counsel was ever filed, and notices of court orders were mailed to Dee's counsel of record, not Dee.

equitable tolling of the AEDPA statute of limitations.

B. *Exhaustion*

The State contends Dee has failed to exhaust fully his sufficiency-of-the-evidence claim. Specifically, the State asserts Dee failed to present this claim for relief to the Louisiana Supreme Court.

"A fundamental prerequisite to federal *habeas* relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519–20 (1982)); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir.1997). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519–20).  The well-established test for exhaustion requires that the substance of the federal *habeas* claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). For exhaustion purposes, it is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a *habeas* petitioner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*. at 32.

Although not raised on direct appeal, Dee presented his claim of insufficient evidence

in his state court applications for post-conviction relief.  In the state district court, Dee presented three independent claims for review, one of which was an insufficient evidence claim.  In his writ application to the Louisiana Fifth Circuit Court of Appeal filed by counsel on Dee's behalf, counsel blurred the distinct nature of the claims and raised the sufficiency claim in the context of his ineffective assistance of counsel claims.  However, in addressing the ineffective assistance of counsel issue, the state court of appeal reached the merits of the sufficiency of evidence claim.  Finally, the Court has reviewed, in particular, Dee's Louisiana Supreme Court writ application.  Despite counsel's failure to set forth each of his three claims under his captioned heading "assignment of error," the summary of the argument makes clear that his primary argument was, in fact, that the State failed to introduce sufficient evidence to convict him of the crime.[27]  The Court therefore concludes that Dee has properly exhausted his sufficiency of the evidence claim.

Having found that Dee is entitled to equitable tolling and that his claims were properly exhausted, the Court will proceed to review the merits of his claims for relief.  Before analyzing the merits, however, the Court will first review the pertinent facts.

### III.  *Substantive Merits Review*

A.  *Factual history*

The facts summarized here were set forth by the Louisiana Fifth Circuit in connection

---

[27] State Rec., Vol. 3 of 6, Louisiana Supreme Court writ application No. 13-KP-1016, p. 7.

with Dee's direct appeal.[28] In January of 2008, Detective Ashton Gibbs of the Gretna Police Department was involved in a narcotics investigation that targeted Dee.  Specifically, on January 22, 2008, Detective Gibbs was contacted by a confidential informant who told him that defendant was selling heroin out of room 20 of the Oasis Motel in Gretna. That afternoon, the confidential informant, under Detective Gibbs' constant surveillance, went to the Oasis Motel and purchased heroin from defendant.  Immediately after the purchase, the confidential informant met with Detective Gibbs and turned over the four foil packets of heroin that he had just purchased.

As part of his investigation, Detective Gibbs met with a member of the Oasis motel staff and was given a registration card with Dee's name on it for room 20. Although John Holmes' name was also on the registration card, he was not the subject of the investigation. In addition, the officers conducted surveillance of the motel and observed Dee entering and exiting room 20. Dee was also seen entering a Honda Accord.

After Dee's presence was corroborated at the motel, Detective Gibbs, on January 23, 2008, applied for and obtained a search warrant for room 20. Thereafter, Detective Gibbs, along with assisting members of the major crimes task force, went to the motel to execute the warrant. Upon arrival, Detective Gibbs noticed that the black Honda Accord was missing from the parking lot. However, the vehicle was located at a convenience store about one block from

---

[28] *State v. Dee*, 09-712 (La. App. 5th Cir. 2/23/10), 34 So.3d 892, 895-97.

the motel. Dee was seated in the driver's seat of the vehicle. Detective Gibbs approached Dee, identified himself as a police officer, and asked him where he was staying. Dee replied that he was staying in room 20 at the Oasis Motel. Detective Gibbs told Dee he was the subject of a criminal investigation and that a search warrant had been issued for room 20 of the Oasis Motel. For the officers' safety, Dee was detained using handcuffs, and a pat down of his outer clothing was conducted for weapons. Dee was advised of his constitutional rights, and he acknowledged that he understood his rights. Dee was placed in the rear of a police unit and was transported to the Oasis Motel.

Dee was given a copy of the warrant and was asked if he had a key for room 20. Dee said he had a key in his pants' pocket. Detective Gibbs retrieved Dee's key chain, which contained a gold key and a black key. The gold key was used to gain access to room 20. A security sweep of the room revealed no one was present in the room. Thereafter, the room was searched.

A black Sentry safe was found in the room. The black key recovered from Dee was used to open the safe. Inside the safe, a shaving cream can was found, and it contained a false compartment. The bottom of the can was unscrewed, and a clear plastic bag with brown powder substance was discovered inside the can. A bluish, felt bag with two more clear plastic bags containing a brown powder substance was also found inside the can. A preliminary field test determined this was heroin. Two digital scales and motel receipts were also found inside the safe. Dee's name appeared on some of the receipts. A clear plastic bag with a fine white

15

powder and a package of heavy duty aluminum were also found in the room.

After the search was completed, Dee was presented with the evidence against him and was advised that he was under arrest. A search incident to Dee's arrest resulted in the seizure of $497 in currency from his pants' pocket. Detective Gibbs testified that Dee was not able to offer an explanation of how this money was obtained. He testified that Dee stated he was currently unemployed and did not have any source of income.

Further testing confirmed that the brown powder substance was heroin. Also, the white powder was tested, and it was determined to be sodium bicarbonate, which is commonly used to cut drug products.

B.  *Standards of review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

16

U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct.

17

1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.  A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.  *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011).  Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. at 102; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

C.  *Petitioner's Claims*

(1) *Sufficiency of the evidence*

Dee contends the State failed to produce sufficient evidence at trial that he was in constructive possession of the heroin found in room 20 of the Oasis Motel.  Specifically, he argues that the State failed to show he had dominion and control over the heroin, which he emphasizes officers found in a safe located underneath clothes in a hotel room that he was not

18

physically located in at the time and that was registered to someone else.

A claim of insufficient evidence presents a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir.1995). Therefore, this Court must examine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 319; *see also Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir.2011); *Perez*, 529 F.3d at 594. The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are within the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir.2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh

19

the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985).   In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993)).   Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

To prove possession with intent to distribute heroin under Louisiana Revised Statute 40:966(A), the State was required to show Dee knowingly and intentionally possessed heroin and that he did so with the specific intent to distribute it. *See State v. Jones*, 11–8, pp. 5–6 (La. App. 5 Cir. 11/15/11), 78 So.3d 274, 279, *writ denied*, 11–2781 (La. 4/13/12), 85 So.3d 1246; *State v. Collins*, 09–283, p. 6 (La. App. 5 Cir. 12/8/09), 30 So.3d 72, 77, *writ denied*, 10–0034 (La.9/3/10), 44 So.3d 696.

20

Possession of a controlled dangerous substance may be established by actual physical possession or by constructive possession. *State v. Major*, 03–3522, p. 7 (La. 12/1/04), 888 So.2d 798, 802. It is not necessary for the State to prove that the defendant had actual physical possession of the narcotics. *State v. Trahan*, 425 So.2d 1222 (La. 1983). A person not in physical possession of a drug may have constructive possession when it is established that the drug is under that person's dominion or control. *State v. Washington*, 11–716, p. 8 (La. App. 5 Cir. 3/13/12), 90 So.3d 1157, 1162.

Dee challenges only whether the State produced sufficient evidence to link him to the motel room and prove constructive possession of the heroin found inside the safe located in the room. At trial, the state presented evidence that Dee used room 20 at the Oasis Motel in connection with heroin distribution. Detective Gibbs testified that he participated in a narcotics investigation regarding the illegal sales of narcotics from the Oasis Motel and particularly targeting Dee.[29] He testified that staff at the motel confirmed Dee was listed on the registration card as a registered motel guest in room 20. Wendy Lee, a staff member of the motel and daughter of the owner, confirmed this as well during her testimony at trial.[30] Detective Gibbs testified that he conducted surveillance at the motel and personally observed

---

[29] State Rec., Vol. 2 of 6 (Trial transcript - March 18, 2009), pp. 54-82 (direct examination of Detective Gibbs).

[30] Ms. Lee also testified that motel policy allows only one key to be issued for each room. State Rec., Vol. 2 of 6 (Trial transcript - March 18, 2009), pp. 36-40, 43.

Dee entering and exiting room 20.  Based on his investigation, Detective Gibbs obtained a search warrant for the premises.

When Detective Gibbs located Dee and inquired where he was staying, Dee stated he was staying in room 20 at the Oasis Motel.  Dee also possessed a key chain with two separate keys that unlocked both room 20 and a safe located inside the room.  The search warrant executed for the motel room yielded several items including five different receipts with Dee's name on them that were found in the safe with the heroin, scales and other drug paraphernalia.

The evidence presented at trial was sufficient for the jury to find that Dee exercised dominion and control over the heroin in room 20 so as to show that he constructively possessed it.  A rational and reasonable factfinder weighing the evidence presented at trial plainly could have rejected the defense theory that the heroin and drug paraphernalia found in the motel room belonged to John Holmes and not Dee, and could have instead concluded that it was subject to Dee's dominion and control despite evidence that John Holmes' name also appeared on the motel registration card and some receipts.

Although Dee does not argue expressly that the evidence was insufficient to prove that he had specific intent to distribute, a review of the trial record shows that the State presented sufficient evidence on this issue as well.  Louisiana Revised Statute 14:10(1) defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to

act." The intent to distribute may be established by proving circumstances surrounding the defendant's possession, which give rise to reasonable inferences of intent to distribute. *Jones*, 11–8 at 6, 78 So.3d at 279. Factors that may give rise to a reasonable inference that a defendant had the specific intent to distribute include the following: 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute. *Id.* Drug paraphernalia such as scales may be considered as evidence that the defendant possessed with intent to distribute drugs. *State v. Trahan*, 425 So.2d at 1225.

The testimony and evidence at trial established that a large amount of heroin was found in room 20 along with additional evidence of drug paraphernalia, all consistent with distribution of the drug rather than personal use.[31] The evidence recovered included tools used in the packaging and distribution of narcotics, such as digital scales, sodium bicarbonate powder commonly used as a cutting agent, and aluminum foil, a common packaging unit for street level sales of heroin. The evidence at trial was sufficient for the jury to find that Dee had the specific intent to distribute the heroin found in the motel room.

The evidence in this case, viewed in the light most favorable to the prosecution, was

---

[31] State Rec., Vol. 2 of 6 (Trial Transcript - March 18, 2009), p. 72 (Detective Ashton Gibbs) and p. 96 (Todd Vignes, offering expert testimony regarding packaging, distribution and value of controlled dangerous substances).

sufficient for any rational trier of fact to find that the State satisfied the elements necessary to prove possession with intent to distribute heroin.  Therefore, Dee cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He is not entitled to relief on this claim.

(2)  *Ineffective assistance of trial counsel*

Dee contends his counsel rendered ineffective assistance when he failed to investigate and obtain the video from the security camera of the Oasis Motel for the time during which the purported drug transaction with the confidential informant occurred and to subpoena the dispatch logs of the Gretna Police Department.  Dee argues that these tapes would have revealed he did not in fact engage in any criminal activity at the motel.  This evidence would then disprove the elements of the crime and the probable cause underlying the issuance of the search warrant.  The state courts rejected this claim on the merits, finding the claim was entirely speculative as to the existence of any videotape, and regardless, such video would not have changed the outcome.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the

24

evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.,* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable

25

probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making

a determination as to whether prejudice occurred, courts must review the record to determine

"the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*,

796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims

on the merits and because such claims present a mixed question of law and fact, this Court

must defer to the state court decision unless it was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002).

Moreover, the United States Supreme Court has held that, under the AEDPA, federal *habeas*

*corpus* review of ineffective assistance of counsel claims must be doubly deferential.  *Woods*

*v. Donald*, 135 S.Ct. 1372, 1376 (2015) (citing *Burt v. Titlow*, 571 U.S. __, 134 S.Ct. 10, 13, 187

L.Ed.2d 348 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179

L.Ed.2d 557 (2011).

To be successful under *Strickland*, a petitioner "'who alleges a failure to investigate on

the part of his counsel must allege with specificity what the investigation would have revealed

and how it would have altered the outcome of the trial.'" *Gregory v. Thaler*, 601 F.3d 347, 352

(5th Cir.2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989)); *Moawad v.*

*Anderson*, 143 F.3d 942, 948 (5th Cir.1998). The petitioner must provide factual support

demonstrating what exculpatory evidence further investigation would have revealed. *Moawad*,

26

143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir.2005). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696). For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir.1994).

As for the police dispatch logs, Dee offers nothing with respect to what the logs would have revealed or how they would have been beneficial to the defense. As to the video, Dee offers no evidence, besides his purely speculative and self-serving assertions, that relevant motel security videotape existed or that it would have contained exculpatory evidence. He points to the testimony of Ms. Lee as support for the existence of video. However, a review of her testimony does not show that surveillance *videotape* from January 2008 existed and could have been obtained. She merely stated that the motel had surveillance cameras that made it possible to monitor guests. She admitted that those cameras were not always clear or accurate. Furthermore, her testimony indicated that no surveillance recordings from 2008 existed.[32] Because mere speculation cannot provide a sufficient legal basis to conclude that counsel's performance at trial was constitutionally defective, the first prong of *Strickland* has

---

[32] State Rec., Vol. 2 of 6 (Trial Transcript - March 18, 2009), p. 44.

not been met.

Nor has Dee satisfied the prejudice prong of *Strickland*.  Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.  Dee claims the videotape would not reveal him engaging in any drug transaction and this absence of evidence would disprove the elements of the crime of possession with intent to distribute heroin.  However, even assuming that Dee's unsupported and speculative allegations with respect to the videotape were true, the mere absence of videotaped footage of Dee engaging in actual distribution of heroin would not have undermined the evidence presented by the State at trial that proved he possessed heroin and had the specific intent to distribute it.  Nor would it have refuted Detective Gibbs' independent investigation of Dee and his personal surveillance of the drug transaction that took place between Dee and the confidential informant.  The state court's rejection of Dee's claim that his trial counsel was ineffective for failing to investigate and secure motel videotape and police dispatch logs was neither contrary to nor an unreasonable application of *Strickland*.

(3)  *Ineffective assistance of appellate counsel*

Finally, Dee contends his appellate counsel provided ineffective assistance on appeal by failing to raise a claim that the evidence was insufficient to convict him.  The claim was rejected on post-conviction review by the state courts.

As with trial counsel, in order to prove that appellate counsel was ineffective, a petitioner must satisfy the two-prong test enunciated in *Strickland*, 466 U.S. at 697 (*i.e.*, that

counsel's performance was deficient and that the deficient performance prejudiced the defense). *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.2004). An appellate counsel's performance may not be deemed deficient for failing to argue a frivolous or non-meritorious claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Furthermore, a showing of prejudice requires that a petitioner establish a reasonable probability that he would have succeeded on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir.2001); *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir.2000).

Dee's sufficiency of the evidence claim is premised on his argument that the State failed to prove constructive possession of heroin. For the reasons previously stated, however, the argument is meritless. Because Dee's underlying sufficiency of the evidence claim has no merit, appellate counsel was not deficient for failing to raise that claim on direct appeal. Accordingly, Dee's claim of ineffectiveness with respect to appellate counsel is without merit.

Under the doubly deferential standards mandated by the AEDPA, there is no basis for this Court to find that the state court's decision denying Dee's ineffective assistance of counsel claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

29

## RECOMMENDATION

**IT IS RECOMMENDED** that Dee's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[33]

New Orleans, Louisiana, this 22nd day of _____ May _____, 2015.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.